J-A21014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ALLEN R. DANIELY :
:
Appellant : No. 2699 EDA 2022

Appeal from the PCRA Order Entered October 11, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001875-2008

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED DECEMBER 19, 2023**

Appellant Allen R. Daniely appeals from the order denying his timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant argues that the PCRA court erred in rejecting his ineffectiveness claims against both trial counsel and direct appeal counsel. We affirm.

We adopt the PCRA court's summary of the facts and procedural history underlying this matter. *See* PCRA Ct. Op., 1/9/23, at 1-5. Briefly, Appellant was convicted of first-degree murder and related offenses following the 2007 shooting death of Darryl Jones. After the trial court imposed a mandatory sentence of life imprisonment in 2009, this Court affirmed Appellant's judgment of sentence on direct appeal. *See Commonwealth v. Daniely*,

_____

[1] 42 Pa.C.S. §§ 9541-9546.

1200 EDA 2012, 2013 WL 11259170 (Pa. Super. filed July 16, 2013) (unpublished mem.).

Appellant filed a timely *pro se* PCRA petition in 2014. Appellant subsequently retained PCRA counsel,[2] who filed an amended petition on Appellant's behalf. Therein, Appellant argued that (1) trial counsel was ineffective for advising Appellant that he would receive a twenty-to-forty-year prison sentence if he waived his right to a jury trial; and (2) both trial counsel and direct appeal counsel were ineffective for failing to challenge the sufficiency of the identification evidence. **See** Am. PCRA Pet., 3/23/22, at 9-26.

On October 11, 2022, the PCRA court conducted an evidentiary hearing to address Appellant's jury trial waiver claim. At the hearing, the PCRA court heard testimony from Appellant, Appellant's parents, and trial counsel. Ultimately, the PCRA court found trial counsel credible and concluded that trial counsel did not promise Appellant any specific sentence in exchange for waiving his right to a jury trial. **See** N.T. PCRA Hr'g, 10/11/22, at 104-06. That same day, the PCRA court issued an order dismissing Appellant's petition.

---

[2] We note that Appellant has been represented by numerous attorneys since he filed his PCRA petition in 2014. **See** PCRA Ct. Op. at 1-3. In June of 2021, the PCRA court conducted a hearing pursuant to **Commonwealth v. Grazier,** 713 A.2d 81 (Pa. 1998) and granted Appellant's petition to proceed *pro se*. However, Appellant subsequently retained Teri Himebaugh, Esq., who was granted leave to file an amended petition on Appellant's behalf.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

1. Did the PCRA court err when, after a hearing, it denied Appellant's claim that he was denied his rights under Article 1 § 9 [of the Pennsylvania Constitution] and the Sixth and Fourteenth Amendments to the Constitution of the United States of America when trial counsel ineffectively represented to the Appellant that he should waive his constitutional right to a trial by jury and that if he did so, he would receive no more than a 20 to 40 year sentence?

2. Did the PCRA court err when it denied Appellant's claim that he was denied his rights under Article 1 § 9 [of the Pennsylvania Constitution] and the Sixth and Fourteenth Amendments to the Constitution of the United States of America when trial counsel failed to properly argue insufficiency of the evidence in the motion for judgment of acquittal on the first-degree murder charges; counsel on direct appeal ineffectively failed to challenge the sufficiency of the evidence with regard to the first-degree murder conviction [without a hearing]?

Appellant's Brief at 3 (some formatting altered).

**Waiver of Jury Trial**

In his first issue, Appellant argues that the PCRA court erred in rejecting his claim that trial counsel was ineffective in connection with Appellant's jury trial waiver. *Id.* at 12. Specifically, Appellant reiterates his assertion that trial counsel told Appellant that he would receive a twenty-to-forty-year prison sentence if he waived his right to a jury trial. *Id.* at 19-20. In support, Appellant relies on his own testimony at the PCRA hearing and the testimony from his parents. *Id.* at 16-22. Further, he argues that trial counsel's

- 3 -

"testimony at the PCRA hearing was highly self-serving and incredible" and that the circumstances surrounding the jury trial waiver clearly indicate that he waived his right to a jury trial solely based on trial counsel's advice. *Id.* at 24-26, 30. He also claims that "[t]here was no reasonable, rational evidentiary basis" for trial counsel's advice to proceed with a waiver trial and that "[h]ad [he] received objectively reasonable advice from [trial counsel] . . . he would have elected a jury trial, satisfying the prejudice requirement." *Id.* at 24, 29. Finally, although Appellant acknowledges that he participated in an on-the-record waiver colloquy, he claims that the colloquy "goes to the 'voluntariness' of the waiver and not whether [his decision] was 'intelligent.'" *Id.* at 30.

Our review of the denial of PCRA relief is limited to "whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

We presume that the petitioner's counsel was effective. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). To establish a claim of ineffective assistance of counsel, a defendant "must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the

circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Turetsky***, 925 A.2d 876, 880 (Pa. Super. 2007) (citations omitted).

The burden is on the defendant to prove all three of the following prongs: "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.*** (citations omitted). Moreover, "[a] failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009) (citation omitted).

Here, the PCRA court addressed Appellant's claim as follows:

A claim that trial counsel was ineffective by coercing a defendant to waive his right to a jury trial ordinarily will be unsuccessful where it is "contradicted by testimony elicited from [defendant] during his waiver colloquy." ***Commonwealth v. Bishop***, 645 A.2d 274, 277 (Pa. Super. 1994). Under this rule, where the record shows that defendant testified during his waiver colloquy "that his jury trial waiver was not the product of threats, coercion, or promises . . . . [a defendant's] claim is unsupported by the record, [and] must fail." ***Id.***

However, our Superior Court has recognized a narrow exception to the general rule outlined above. Where a defendant claims that he waived his right to a jury trial because of a specific promise made to him by defense counsel as to what his sentence would be, then the misrepresentation by counsel may invalidate the waiver. ***Commonwealth v. Carey***, 340 A.2d 509, 511 (Pa. Super. 1975). However, because a disappointed defendant may often claim that he was misled by his counsel, defendant's claim

- 5 -

must be corroborated by another source that is accepted as truthful. "Thus, if defense counsel denies any inducement, and if no other corroborating evidence is produced, the waiver will be upheld." *Id.*

At the evidentiary hearing, the Commonwealth presented testimony from trial counsel, Michael Coard, Esq. [(trial counsel)]. [Appellant] presented testimony from his parents, Bonita Crabbe and Alan Crabbe, and [Appellant] also testified on his own behalf.

First, [trial counsel] testified that he had been practicing criminal defense for 26 years. N.T. PCRA Hr'g, 10/11/22, at 7-8. He stated that prior to [Appellant's] trial, he unsuccessfully attempted to persuade the Commonwealth to agree to allow [Appellant] to plead to third-degree murder. *Id.* at 10. After that, [trial counsel] began preparing in earnest for trial, and he explained to [Appellant] the advantages and disadvantages of a jury trial versus a waiver trial. *Id.* at 11-12, 28. Following that discussion, [Appellant] decided to go with a waiver trial. *Id.* at 13. [Trial counsel] further testified that he never told [Appellant], or [Appellant's] parents, that [Appellant] would receive any guaranteed sentence if [Appellant] proceeded with a waiver trial, and that he had never made such a promise in his career as a criminal defense attorney. *Id.* at 13-14. [Trial counsel] also stated that he went through the written waiver form with [Appellant,] and [Appellant] did not have any questions regarding the form. *Id.* at 14-15. Moreover, [trial counsel] testified that during Judge Hughes' oral colloquy regarding the waiver of [Appellant's] rights to a jury trial, there was no indication that the [Appellant] was confused or wished to proceed with a jury trial. *Id.* at 15-16. Lastly, [trial counsel] testified that he did not pressure [Appellant] to proceed with a bench trial, and if [Appellant] wanted to have a jury trial, then he would have taken that course of action. *Id.* at 16.

Next, [Appellant's] mother, Bonita Crabbe, testified. N.T. PCRA Hr'g, 10/11/22, at 31. Ms. Crabbe stated that she spoke with [trial counsel] in [trial counsel's] office and they discussed [Appellant's] possible guilty plea to third degree murder. *Id.* at 31-32. She also said that she spoke to [trial counsel] another time in the courtroom hallway just before the trial. *Id.* at 32-33. Ms. Crabbe testified that during that conversation, [trial counsel] told her that if [Appellant] pled guilty to third[-]degree murder, he would receive a twenty-to-forty-year sentence. *Id.* at 33. When asked if [trial counsel] ever discussed whether [Appellant]

- 6 -

should go with a judge or a jury trial, Ms. Crabbe testified that [trial counsel] said it was better for [Appellant] to go with a judge because "he would get a better plea deal if he goes with the judge." *Id.* at 33-34. Ms. Crabbe testified that she understood that to mean if [Appellant] went with a judge trial, he would receive a twenty-to-forty-year sentence, and if he went with a jury trial, he would get life without parole. *Id.* at 34. She further testified that she believed if [Appellant] decided to have a waiver trial with Judge Hughes, he would not be convicted of anything higher than third-degree murder. *Id.* at 34

Next, [Appellant's] father, Alan Crabbe, testified. N.T. PCRA Hr'g, 10/11/22, at 45. He stated that he spoke with [trial counsel] twice before [Appellant's] trial. *Id.* at 45. Mr. Crabbe testified that his first conversation with [trial counsel] was in [trial counsel's] office, and they discussed whether the [Appellant] should go with a jury trial or judge trial. *Id.* at 45. Mr. Crabbe testified that [trial counsel] said [Appellant] should go with a judge trial, and that [Appellant] would receive 20 years if he went with a judge as opposed to a jury. *Id.* at 45, 54. Mr. Crabbe stated that during the meeting, they also discussed a possible deal for [Appellant] to plead to third[-]degree murder and receive a twenty-to-forty-year sentence. *Id.* at 46. Mr. Crabbe testified that his second conversation with [trial counsel] was in the hallway outside the courtroom, at which time [trial counsel] told Mr. Crabbe that [Appellant] was not going to be able to plead to third[-]degree murder. *Id.* at 46-47. Mr. Crabbe stated that during that conversation, [trial counsel] also discussed the advantages and disadvantages of going with a judge versus a jury. *Id.* at 47. Mr. Crabbe testified that it was his understanding that it would be better for [Appellant] to go with a judge trial. *Id.* at 48. When asked if [trial counsel] explained why it would be better for [Appellant] to be tried in front of a judge, Mr. Crabbe stated that if he went with a judge, [Appellant] would receive a twenty-to-forty-year sentence. *Id.* at 49.

[Appellant] testified next. He stated that he and [trial counsel] had two meetings in the District Attorney's office prior to his trial. N.T. PCRA Hr'g, 10/11/22, at 58. [Appellant] stated that the purpose of those meetings was to discuss a possible plea agreement. *Id.* at 59. [Appellant] testified that [trial counsel] told him the Commonwealth offered him a plea deal of [twenty-to-forty] years if he identified the shooter. *Id.* at 59. However, [Appellant] stated that on the morning of the trial, [trial counsel] informed [Appellant] that they would be going to trial because the

Commonwealth was no longer offering the plea deal. *Id.* at 60. [Appellant] testified that [trial counsel] told [Appellant] that [trial counsel] and the prosecutor had a conversation with Judge Hughes in her chambers. *Id.* at 60. During the conversation, [trial counsel] told Judge Hughes that [Appellant] was prepared to plead to [twenty-to-forty years], but the prosecutor was no longer offering the plea deal. *Id.* [Appellant] stated that [trial counsel] then told Judge Hughes that the reason the plea deal was not going forward was because the Commonwealth wanted [Appellant] to "tell on his own brother." *Id.* Judge Hughes allegedly responded by saying, "Is that true? Not even I would do that, not even I would tell on my own brother." *Id.* Judge Hughes then allegedly continued, "Well, this is a unique case. So if [Appellant] elects to go with a waiver trial, I'll sentence him to [twenty-to-forty]." *Id.* at 60-61. [Appellant] stated that [trial counsel] also conveyed this conversation to [Appellant's] parents, and they agreed with [trial counsel] that [Appellant] should proceed with a waiver trial. *Id.* at 61. [Appellant] testified that [trial counsel] did not go over the advantages and disadvantages of a judge or jury trial, and that the only reason [Appellant] elected to waive his jury trial was because Judge Hughes said she would give him [twenty-to-forty years]. *Id.* at 61-62.

In its findings of fact rendered at the conclusion of the hearing, the court found [trial counsel's] testimony to be credible and credited his emphatic testimony that he had never guaranteed anybody a result of a waiver trial. N.T. PCRA Hr'g, 10/11/22, at 104-105. The court stated that the scenario described by [Appellant] was contradicted by the trial record, the waiver colloquy, [trial counsel's] testimony, and the actions of Judge Hughes. *Id.* at 107. Therefore, the court found that [trial counsel] did not promise [Appellant] that he would get a sentence of [twenty-to-forty] years if he waived his right to a jury trial. *Id.* The court further concluded that [Appellant] failed to meet his burden that his waiver was not knowing, intelligent, and voluntary. *Id.* at 107-08.

The court's rejection of [Appellant's] ineffective assistance of counsel claim premised upon alleged promises made to him about his sentence is fully supported by record. Accordingly, there is no basis to disturb it on appeal. *See Green*, 14 A.3d at 116.

PCRA Ct. Op. at 6-10 (some formatting altered).

Following our review of the record, we discern no error of law in the PCRA court's conclusions, which are supported by the record. ***See Lawson***, 90 A.3d at 4. The record confirms that Appellant participated in an on-the-record waiver colloquy during which time he confirmed that no one had made "any promises of any form to get [him] to waive [his] right to a jury trial." ***See*** N.T. Trial, 7/20/09, at 5-8. Further, the PCRA court credited trial counsel's testimony at the PCRA hearing and concluded that trial counsel "did not promise [Appellant] that he would get a sentence of [twenty-to-forty] years if he waived his right to a jury trial." ***See*** PCRA Ct. Op. at 10. As noted previously, the PCRA court's credibility determinations are binding on this Court. ***See Mitchell***, 105 A.3d at 1265. Therefore, because Appellant has failed to demonstrate that trial counsel made a specific promise that invalidated Appellant's waiver colloquy, Appellant's claim fails for lack of arguable merit. ***See Bishop***, 645 A.2d at 277; ***Carey***, 340 A.2d at 511. For these reasons, Appellant is not entitled to relief.

**Failure to Challenge Identification Evidence**

In his remaining claim, Appellant argues that both trial counsel and direct appeal counsel were ineffective for failing to properly challenge the sufficiency of the identification evidence supporting his conviction for first-degree murder. Appellant's Brief at 31. Specifically, Appellant claims that although trial counsel moved for a judgment of acquittal, trial counsel challenged the evidence proving specific intent, rather than the evidence establishing that Appellant was the shooter. ***Id.*** at 42. Appellant baldly

asserts that trial counsel had no reasonable basis for failing to raise this argument and that, had trial counsel done so, Appellant would have been acquitted of the first-degree murder charge. *Id.* at 42-43. Appellant also claims that direct appeal counsel had no reasonable basis for failing to raise this claim on appeal and that direct appeal counsel's "omission of this claim on direct appeal had an adverse effect on the outcome of the appellate proceedings." *Id.* at 44-45.

"Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." *Commonwealth v. Parrish*, 273 A.3d 989, 1004 n.11 (Pa. 2022) (citation omitted). Further, it is well settled that

> if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then [the] petitioner's derivative claim of [subsequent] counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the *Pierce*[3] test [*i.e.*, the reasonable basis and prejudice prongs] as applied to [subsequent] counsel.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011) (citations omitted and formatting altered).

Here, the PCRA court addressed Appellant's claim as follows:

---

[3] *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987); *see also Turetsky*, 925 A.2d at 880 (same).

It is true that in [Appellant's] statement to police, he denied that he was the shooter. Following **Miranda**[4] warnings, [Appellant] gave a statement in which he admitted to participating in the robbery and murder of Mr. Jones with two other accomplices. N.T. Trial, 7/22/09, at 153-56. However, [Appellant] told police that he was merely a getaway driver, and that prior to the robbery, he gave his gun to one of the other accomplices. **Id.** at 153-54.

However, the Commonwealth offered compelling evidence that [Appellant] admitted to being the shooter, and not merely the getaway driver, in a statement that he made to Commonwealth witness Ebony Sawyer. Ms. Sawyer, who was one of [Appellant's] girlfriends, testified that following the murder of Mr. Jones, she was with [Appellant] when he began playing with a gun and proceeded to point the gun at Ms. Sawyer. N.T. [Trial,] 7/20/09, at 161-62. After Ms. Sawyer said to [Appellant], "you wouldn't shoot me[,]" [Appellant] stated, "you crazy, ask my goonies[.]" **Id.** at 162. According to Ms. Sawyer, [Appellant] said that "somebody got their back blew out the frame[,]" in reference to the Saturday shooting. N.T. Trial, 7/20/09, at 163.

More importantly, the Commonwealth also introduced Ms. Sawyer's statement to police. In that statement, Ms. Sawyer stated that [Appellant] told her the following, while pointing a gun at her:

> He said I should have been there on Saturday. Jerone walked up to the guy and said something to the guy to make him stop. [Appellant] was playing with the gun and was showing me how he shot the guy on Saturday, demonstrating that he shot the gun three times. [Appellant] said that "I tore his back out the frame."

N.T. Trial, 7/22/09, at 97-99. This admission, without more, was sufficient to establish that [Appellant] was the shooter.

Moreover, there was additional compelling evidence that corroborated [Appellant's] admissions. In particular, the Commonwealth presented evidence that three days after the murder, the police traced the signal from the stolen cell phone of the decedent, Mr. Jones, to a residence at the intersection of Germantown Avenue and Washington Lane. N.T. Trial, 7/22/09, at 139-40. After the police witnessed [Appellant] exit the

---

[4] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

residence with a cell phone in his hand, they stopped [Appellant] and patted him down. *Id.* at 140-42. During the pat-down, police found a .40 caliber handgun on [Appellant], which was the same type of gun used to shoot Mr. Jones. *Id.* at 142. Moreover, a ballistics analysis demonstrated that the two fired cartridge cases recovered from the scene of the murder had been fired from the gun recovered from [Appellant]. *Id.* at 83-87. The police then verified that the cell phone [Appellant] was holding was Mr. Jones' missing cell phone. *Id.* at 142-43.

Accordingly, there was ample evidence to support the [c]ourt's finding that [Appellant] robbed and personally shot and killed Mr. Jones. As a result, neither trial nor appellate counsel was ineffective for failing to raise meritless claims based on the sufficiency of the evidence.

PCRA Ct. Op. at 12-13 (footnote omitted and some formatting altered).

Following our review of the record, we discern no error of law in the PCRA court's conclusions, which are supported by the record. *See Lawson*, 90 A.3d at 4. As noted by the PCRA court, the Commonwealth presented ample evidence demonstrating that Appellant was the shooter. *See* PCRA Ct. Op. at 12-13. Therefore, trial counsel was not ineffective for failing to challenge the sufficiency of the identification evidence. *See Commonwealth v. Rivera*, 816 A.2d 282, 292 (Pa. Super. 2003) (reiterating that "trial counsel will not be considered ineffective for failing to pursue meritless claims" (citation omitted and formatting altered)). Likewise, because Appellant has failed to prove that trial counsel was ineffective, his ineffectiveness claim against direct appeal counsel also fails. *See id*; *see also Parrish*, 273 A.3d at 1004 n.11; *Chmiel*, 30 A.3d at 1128. Accordingly, Appellant is not entitled to relief. For these reasons, we affirm.

Order affirmed. Jurisdiction relinquished.

- 12 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date:  12/19/2023